Bonnie J. STUBBS, Appellant,

v.

**NORTH MEMORIAL MEDICAL CENTER, et al., and Dr. Bryan Hubble, Respondents.**

No. C4–89–918.

Court of Appeals of Minnesota.

Nov. 14, 1989.

Review Denied Jan. 12, 1990.

Russell H. Crowder and Beverly K. Dodge, Steffen & Munstenteiger, P.A., Anoka, for Bonnie J. Stubbs, appellant.

David Alsop, Gislason, Doslund, Hunter & Malecki, New Ulm, for North Memorial Medical Center, et al., respondents.

Jerome C. Briggs and Regina M. Chu, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Dr. Bryan Hubble, respondent.

Heard, considered and decided by SCHUMACHER, P.J., and FORSBERG and GARDEBRING, JJ.

## OPINION

GARDEBRING, Judge.

This case arises from the unauthorized publication of "before" and "after" photographs of appellant's cosmetic surgery.

On July 15, 1988, the trial court granted summary judgment on all of appellant's claims in favor of respondent, North Memorial Medical Center. On December 27, 1988, the trial court granted summary judgment in favor of respondent, Dr. Bryan Hubble, on all of appellant's claims, except her claim of a violation of Minn.Stat. § 144.651 (1988), the Patients' Bill of Rights. Appellant seeks review of the entry of summary judgment granted to North Memorial and partial summary judgment granted to Dr. Hubble. Dr. Hubble filed a notice of review claiming the trial court erred in denying his request for summary judgment on appellant's Patients' Bill of Rights claim. We affirm in part, reverse in part and remand.

## FACTS

Respondent Dr. Bryan Hubble performed cosmetic surgery on appellant Bonnie Stubbs. The surgery was performed on an outpatient basis at a same-day surgery center. Dr. Hubble photographed appellant before and after the surgery on her chin and nose.

On September 4, 1986, North Memorial Medical Center began distributing copies of a promotional/educational publication entitled "Sketches." "Before" and "after"

photographs of appellant's face, taken by Dr. Hubble, were contained in "Sketches." Appellant was not identified. Appellant's photographs appeared on the same page as unidentified "before" and "after" photographs of a patient's breast reduction and abdominoplasty (removal of fat from the abdomen). Appellant gave no consent for the publication of the photos.

Appellant alleges that as a result of the publication of her photographs, she lost sleep, and had sore throats, cold sores and headaches.

Appellant commenced this action against North Memorial alleging invasion of privacy, intentional infliction of emotional distress and violation of Minn.Stat. § 144.651 (1988), the Patients' Bill of Rights. The trial court granted summary judgment in favor of North Memorial.

Appellant's causes of action against Dr. Hubble include invasion of privacy, tortious breach of the physician/client relationship, breach of an implied contract, intentional infliction of emotional distress and violation of the Patients' Bill of Rights. The trial court granted summary judgment in favor of Dr. Hubble on all of appellant's claims, with the exception of the violation of the Patients' Bill of Rights claim.

The trial court determined that invasion of privacy, tortious breach of the physician/client relationship and breach of implied contract are not recognized as causes of action in Minnesota. The trial court concluded that appellant failed to establish a prima facie case of intentional infliction of emotional distress, specifically finding that appellant's alleged distress did not meet the necessary standard of severity. Finally, the trial court determined that the Patients' Bill of Rights applied with respect to Dr. Hubble, but not with respect to North Memorial.

## ISSUES

1. Did the trial court err in finding that invasion of privacy, breach of implied contract and tortious breach of the physician/client relationship are not recognizable causes of action in Minnesota?

2. Did the trial court err in concluding that appellant failed to allege sufficient facts to show intentional infliction of emotional distress?

3. Did the trial court err in its application of Minn.Stat. § 144.651 (1988), the Patients' Bill of Rights?

## ANALYSIS

### Standard of Review

On appeal from a summary judgment it is the function of the reviewing court only to determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The reviewing court must view the evidence in the light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

### Invasion of Privacy

■ Minnesota has never recognized a cause of action for invasion of privacy, although many other states have done so. *Hendry v. Conner,* 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975). However, when considering claims for invasion of privacy, the courts have identified factors necessary to support such a claim, were it to be recognized. *Id.* at 318, 226 N.W.2d at 922–23.

The tort, invasion of privacy, can be of four different types: (1) unreasonable invasion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the others' private life; or (4) publicity that unreasonably places the other in a false light before the public. Prosser, *Torts* (4 ed.) pp. 802–818. In the instant case, appellant alleges that unreasonable publicity has been given to her private life and that the publicity has unreasonably placed her in a false light.

Where, as here, unwanted publicity is given to an aspect of an individual's life which is inherently private, justice would seem to require that there be some form of redress under the law. It is especially

distressing that the published information was disclosed by a physician. There are few relationships between individuals more sacrosanct than that between a physician and patient.

It is not, however, the function of this court to establish new causes of action. The long established rule in Minnesota is that invasion of privacy is not recognized as a cause of action and for this reason the trial court is affirmed on this issue.

*Intentional Infliction of Emotional Distress*

Appellant argues that Dr. Hubble and North Memorial intentionally inflicted emotional distress resulting in a loss of sleep, cold sores, headaches and sore throats.

To establish the tort of intentional infliction of emotional distress appellant must prove: (1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) appellant suffered emotional distress; and (4) that distress was severe. *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 438–39 (Minn.1983). To be considered "extreme and outrageous," the actionable conduct must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community. *Id.* at 439.

"Severe emotional distress" is defined as distress which is so severe that no reasonable person could be expected to endure it. *Id.* at 439. The *Hubbard* court notes that the operation of this tort is sharply limited to cases involving particularly egregious facts. *Id.* In *Hubbard,* the plaintiff's allegations that, as a result of the emotional distress, he suffered from stomach disorders, a skin rash and high blood pressure, were determined not to be sufficiently severe. *Id.*

Appellant's allegations of lost sleep, sore throats, cold sores and headaches fail to meet the severity standard set out by the court in *Hubbard.* On this basis, we determine that the trial court correctly granted summary judgment against both respondents on appellant's intentional infliction of emotional distress claim. We do not, therefore, reach the issue of whether the publication of appellant's photographs meets the standard of extreme and outrageous conduct, or intentional and reckless, as required by *Hubbard.*

*Patients' Bill of Rights*

Appellant alleges that both North Memorial and Dr. Hubble violated Minn.Stat. § 144.651 (1988), the Patients' Bill of Rights. The trial court granted North Memorial's request for summary judgment on this issue, determining that, as to North Memorial, appellant did not fall within the definition of "patient" under Minn.Stat. § 144.651, subd. 2 (1988). Appellant has appealed this ruling. Further, the trial court denied Dr. Hubble's motion for summary judgment on this issue, determining that the act governed appellant's relationship with Dr. Hubble, and Dr. Hubble seeks review of the denial of summary judgment.

A denial of summary judgment is not ordinarily appealable. *Cole v. Paulson,* 380 N.W.2d 215, 219 (Minn.Ct.App. 1986). The reviewing court may, however, make a determination on the issue if it is found to be in the interest of judicial efficiency to resolve all controversies between the parties at this time. *See McGuire v. C. & L. Restaurant, Inc.,* 346 N.W.2d 605, 614 n. 11 (Minn.1984). Because we determine that no cause of action against either defendant arises under the Patients' Bill of Rights, judicial efficiency is served by resolving the issue in this appeal.

The Patients' Bill of Rights is a broad legislative enactment, articulating a series of patients' rights, and intended to promote their interests and well being. Minn.Stat. § 144.651, subd. 1 (1988).

A "patient" is defined as:

[A] person who is admitted to an acute care inpatient facility for a continuous period longer than 24 hours, for the purpose of diagnosis or treatment bearing on the physical or mental health of that person.

Minn.Stat. § 144.651, subd. 2 (1988). The language in the statute defining patient is

clear and unambiguous in requiring that the person seeking to qualify as a patient must be admitted to an acute care inpatient facility for a continuous period of longer than 24 hours. Appellant here does not fit within the confines of that definition.

Appellant's surgery took place at a same-day surgery center, not a party to this action. Appellant not only fails to meet the 24–hour requirement, but was also not admitted to an inpatient facility. The Patients' Bill of Rights is not applicable to this factual situation. Accordingly, we affirm the grant of summary judgment on appellant's Patients' Bill of Rights claim with respect to North Memorial and reverse the trial court's denial of summary judgment with respect to Dr. Hubble.[1]

### Breach of Implied Contract

Appellant alleges that Dr. Hubble breached an implied contract. The trial court determined that Minnesota does not recognize implied contracts, and granted summary judgment in favor of Dr. Hubble.

■ Implied contracts are recognized in Minnesota. The courts have held that a contract implied in fact is in all respects a true contract. *Roberge v. Cambridge Cooperative Creamery*, 248 Minn. 184, 188, 79 N.W.2d 142, 145 (1956). The existence of a contract to be implied in fact is a question for the trier of fact. *Id.* at 189, 79 N.W.2d at 146. The terms and construction of the contract are also to be determined by the factfinder. *Bergstedt, Wahlberg, Berquist Associates, Inc. v. Rothchild*, 302 Minn. 476, 480, 225 N.W.2d 261, 263 (1975).

Dr. Hubble argues that breach of an implied contract does not constitute a recognized cause of action in Minnesota when the parties are a physician and his patients. Other jurisdictions have recognized implied contracts between physicians and their patients. *See Hammonds v. Aetna Casualty*

*& Surety Company*, 243 F.Supp. 793 (N.D. Ohio 1965); *Horne v. Patton*, 291 Ala. 701, 287 So.2d 824 (1973); *Geisberger v. Willuhn*, 72 Ill.App.3d 435, 28 Ill.Dec. 586, 390 N.E.2d 945 (1979); *MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801 (1982); *Doe v. Roe*, 93 Misc.2d 201, 400 N.Y.S.2d 668 (N.Y.Sup.Ct.1977).

■ Minnesota has not expressly held that an implied contract can exist between a patient and their physician. However, there appears to be no reason why such a contract could not be found on these facts.

The court in *Hammonds* reasoned as follows:

Any time a doctor undertakes the treatment of a patient, and the consensual relationship of physician and patient is established, two jural obligations (of significance here) are simultaneously assumed by the doctor. Doctor and patient enter into a simple contract, the patient hoping that he will be cured and the doctor optimistically assuming that he will be compensated. As an implied condition of that contract, this Court is of the opinion that the doctor warrants that any confidential information gained through the relationship will not be released without the patient's permission. Almost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, and every patient has a right to rely upon this warranty of silence. The promise of secrecy is as much an express warranty as the advertisement of a commercial entrepreneur. Consequently, when a doctor breaches his duty of secrecy, he is in violation of part of his obligations under the contract.

*Hammonds*, 243 F.Supp. at 801.

The trial court erroneously granted Dr. Hubble summary judgment on appellant's breach of an implied contract claim.

---

1. We note, without deciding, that there may be no private cause of action available under the Patients' Bill of Rights. Whether a statute creates a private cause of action is a question of legislative intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Morris v. American Family Mutual Insurance Co.*, 386 N.W.2d 233 (Minn.1986). In drafting the Minnesota Patients' Bill of Rights the legislature did not explicitly create a private cause of action, and did instead provide a specific, administrative enforcement mechanism. Its intent as to the creation of a private cause of action is, therefore, at best, unclear.

Minnesota does recognize implied contracts. Therefore, we reverse and remand.

*Tortious Breach of the Physician/Client Relationship*

 Appellant alleges that Dr. Hubble tortiously breached the physician/client relationship. This cause of action has not previously been recognized in Minnesota.

In *Wenninger v. Muesing*, 307 Minn. 405, 240 N.W.2d 333 (1976), the plaintiff brought a petition for a writ of prohibition to restrain the district court from enforcing an order directing plaintiff to provide defendant with authorizations allowing interrogation of plaintiff's attending physician outside the presence of plaintiff's counsel. The court, in discussing the importance of the presence of the plaintiff's attorney while the physicians were being questioned, stated:

> We note without deciding that a physician who discloses confidential information about his patient to another in a private interview may be subject to tort liability for breach of his patient's right to privacy or to professional discipline for unprofessional conduct.

*Id.* at 411, 240 N.W.2d at 337. However, no Minnesota case has gone beyond this mere recognition of the issue.

The function of this court is primarily decisional and error correcting, rather than legislative or doctrinal. For this reason, we decline to recognize a cause of action which has not been recognized previously by the courts or created by legislative action. Therefore, the trial court's grant of summary judgment in favor of Dr. Hubble is affirmed.

*Punitive Damages*

Dr. Hubble seeks review of the trial court's decision to allow appellant to amend her complaint to assert punitive damages against him. Because of our decision here, appellant's only remaining cause of action against Dr. Hubble is for breach of an implied contract. Nothing remains to which punitive damages may attach. Therefore, we decline to consider whether the trial court abused its discretion in allowing the amendment.

## DECISION

Affirmed in part, reversed in part and remanded.

FORSBERG, J., concurs specially.

FORSBERG, Judge (concurring specially):

I concur with the majority except that I would find that the so-called Patients' Bill of Rights statute, Minn.Stat. § 144.651 (1988), did not provide for a private cause of action for damages.